UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALDWIN ACADEMY, INC. and PERICO HOLDINGS USA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MARKEL INSURANCE COMPANY and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:20-cv-02004-H-AGS<br><br>**ORDER DENYING DEFENDANT MARKEL INSURANCE COMPANY'S MOTION TO DISMISS**<br><br>[Doc. No. 7.] |

On September 9, 2020, Plaintiffs Baldwin Academy, Inc. and Perico Holdings USA, LLC (collectively, "Plaintiffs") filed a complaint against Defendant Markel Insurance Company in California state court. (Doc. No. 1-3 Ex. 2, Compl.) On October 13, 2020, Defendant removed the action to federal court on the basis of diversity jurisdiction. (Doc. No. 1.) On October 23, 2020, Defendant filed a motion to dismiss Plaintiffs' complaint for failure to state a claim. (Doc. No. 7.) On November 25, 2020, Plaintiffs filed their opposition. (Doc. No. 8.) On December 7, 2020, Defendant filed its reply. (Doc. No. 11.) On December 14, 2020, the Court took the matter under submission. (Doc. No. 13.) For the reasons that follow, the Court denies Defendant's motion to dismiss.

**Background**

The following facts are taken from Plaintiffs' Complaint. (Doc. No. 1-3 Ex. 2.) Baldwin Academy ("Baldwin") is a preschool in the Pacific Beach community of San Diego County, California. (Id. ¶ 8.) Plaintiffs purchased an insurance policy for coverage of Baldwin from Defendant, which was effective from June 12, 2019 to June 12, 2020 (the "Policy"). (Id. ¶ 9.) On Saturday, March 14, 2020, a parent of one of Baldwin's students notified Baldwin staff that she had tested positive for COVID-19, and that the student's grandparent had also tested positive for COVID-19. (Id. ¶ 15.) Plaintiffs allege the parent who tested positive for COVID-19 had repeatedly visited Baldwin's campus during the week of March 8, 2020 through March 13, 2020 to drop off and pick up a student. (Id. ¶ 16.) After receiving the parent's email, Baldwin staff notified parents on Sunday, March 15, 2020 that the school was temporarily closing and that there would be no classes for the week of March 16, 2020. (Id. ¶ 17.) On Monday, March 16, 2020, San Diego Mayor Kevin Faulconer issued Executive Order No. 2020-1 in response to the spread of COVID-19 (the "San Diego Order"). (Id. ¶ 19.) On Thursday, March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, which directed all Californians to stay at home (the "California Order"). (Id. ¶ 21.) On March 20, 2020, Baldwin initiated a business income loss claim with Defendant for the closure of the preschool. (Id. ¶ 27.) On April 20, 2020, Defendant denied Baldwin's claim. (Id. ¶ 29.) Plaintiffs allege they appealed Defendant's denial three times over the subsequent months, and that Defendant reaffirmed its denial each time. (Id. ¶ 31.) On September 9, 2020, Plaintiffs filed a complaint against Defendant for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory relief. (Id. ¶¶ 33–48.) By the present motion, Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. (Doc. No. 7 at 1–2.)

///
///
///

## Discussion

I.  **Legal Standards**

    A.  **Federal Rule of Civil Procedure 12(b)(6)**

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Courts "may, however,

consider materials that are submitted with and attached to the Complaint." United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011) (citing Lee, 250 F.3d at 688); see In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, [courts] limit [them]selves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.").

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See DeSoto, 957 F.2d at 658.

### B. Insurance Contract Interpretation

Since federal jurisdiction in this action is based on diversity of citizenship, the substantive law of California governs the interpretation of insurance policy provisions. Stanford Univ. Hosp. v. Fed. Ins. Co., 174 F.3d 1077, 1083 (9th Cir. 1999); Humboldt Bank v. Gulf Ins. Co., 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004). Interpretation of an insurance policy is a question of law for the court. Powerine Oil Co., Inc. v. Superior Court, 118 P.3d 589, 597 (Cal. 2005). Such interpretation must give effect to "the mutual intention of the parties at the time the contract is formed . . . ." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 627 (Cal. 1995). To determine the intent of the parties behind an insurance contract, the Court "look[s] first to the language of the contract in order to ascertain its plain meaning," reading the language in its "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." Id. (internal citations and quotation marks omitted). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." Id. (citing Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Insurance Co., 855 P.2d 1263, 1271

(Cal. 1993)). Language in an insurance contract "must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Id.

"Insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1213 (Cal. 2003) (citations omitted). When there is ambiguity in an insurance policy, the policy's exclusions and exceptions are strictly construed against the insurer and liberally interpreted in favor of the insured in order to protect the insured's reasonable expectation of coverage. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 884 P.2d 1048, 1053 (Cal. 1994); see also Delgado v. Heritage Life Ins. Co., 203 Cal. Rptr. 672, 677 (Cal. Ct. App. 1984). Any limitation of coverage must be "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." Haynes v. Farmers Ins. Exch., 89 P.3d 381, 385 (Cal. 2004). Furthermore, the burden is on the insurer to "phrase exceptions and exclusions in clear and unmistakable language." MacKinnon, 73 P.3d at 1213 (quoting State Farm Mut. Auto. Ins. Co. v. Jacober, 514 P.2d 953, 957–58 (Cal. 1973)). Nevertheless, "[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co., 78 Cal. Rptr. 2d 429, 432 (Cal. Ct. App. 1998) (citing Legarra v. Federated Mutual Ins. Co., 42 Cal. Rptr. 2d 101, 105 (Cal. Ct. App. 1995)).

The insured bears the burden of establishing that a claim is within the basic scope of coverage. MacKinnon, 73 P.3d at 1213. But the burden is on the insurer to establish that the claim is specifically excluded. Id. (citing Aydin Corp. v. First State Ins. Co., 959 P.2d 1213, 1215 (Cal. 1998)).

**II.    Analysis**

Over the past few months there have been several insurance coverage cases relating to the COVID-19 pandemic. Most of these cases involved the applicability of "Business Income" and "Civil Authority" insurance coverage to business shutdowns caused by COVID-19, as well as "Virus Exclusion" provisions. See Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept.

22, 2020); W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies, No. 2:20-cv-05663-VAP-DFMx, 2020 WL 6440037, at *3 (C.D. Cal. Oct. 27, 2020); Boxed Foods Co., LLC v. California Capital Ins. Co., No. 20-CV-04571-CRB, 2020 WL 6271021, at *3 (N.D. Cal. Oct. 26, 2020). As Defendant notes, these cases have uniformly rejected attempts to claim coverage for business losses resulting from the COVID-19 pandemic under Business Income and Civil Authority provisions. (Doc. No. 7-1 at 4 n.5.) This case is unique as Plaintiffs do not claim coverage under a traditional Business Income provision or Civil Authority provision. Rather, they seek coverage under a "Communicable Disease Endorsement," which specifically provides coverage for loss of business income resulting from communicable diseases. (Doc. No. 1-3 Ex. 2 ¶ 10.)

Defendant argues Plaintiffs' complaint fails to state a valid claim for relief because the Policy precludes coverage of their insurance claim as a matter of law. (Doc. No. 7-1 at 1.) Plaintiffs attached the Policy to their complaint; thus, for purposes of this motion, the Court may consider its provisions. See Lee, 250 F.3d at 688. The issue is whether the "California Business Income Changes – Communicable Disease and Food Contamination" Endorsement provides coverage for Plaintiffs' claim (the "Endorsement"). (Doc. No. 1-4 at 63–65.) The Endorsement states in relevant part:

> **A.1.** We will pay for the actual loss of Business Income you sustain as a result of a temporary shutdown or "suspension" of your entire "operations" at your described premises during the "period of restoration". The shutdown or "suspension" of your "operations" must be the result of an order or recommendation from a local, state or federal Board of Health or any other governmental authority having jurisdiction over your "operations". Such shutdown or "suspension" must be caused by or result from a Covered Cause of Loss as described in Paragraph 3. below.

(Id. at 63.) Paragraph 3 states:

> **A.3.** A Covered Cause of Loss is an outbreak, at premises described in the Declarations, of a . . . **a.** "Communicable disease" such as, but not limited to, meningitis, measles or Legionnaire's disease . . .

(Id. at 64.) There appears to be no dispute among the parties that COVID-19 counts as a "communicable disease" under the Policy's definition. Rather, Defendant contends that the Endorsement allegedly imposes three conditions that claims must satisfy in order to be

eligible for coverage: (1) an "outbreak" of a "communicable disease" at "[the insured] premises," (2) a "shutdown or 'suspension'" of operations as a "result of an order or recommendation from a . . . governmental authority," and (3) the government-ordered shutdown being "caused by or result from" "an outbreak, at [the insured] premises." (Doc. No. 7-1 at 1.) Plaintiffs' claim allegedly fails on three grounds: (1) there was no "outbreak" at Baldwin, (2) Baldwin's closure was voluntary, occurred before the issuance of government orders, and thus was not "the result of an order or recommendation from a . . . governmental authority," and (3) any government-ordered closure was not "caused by" and did not "result from" anything that happened at Baldwin. (Id. at 6.) The Court disagrees.

The Court concludes that Plaintiffs have stated a claim sufficient to survive the instant motion to dismiss. First, Plaintiffs have plausibly alleged the existence of an "outbreak" of COVID-19 at Baldwin. Plaintiffs allege a parent of a Baldwin student notified Baldwin that she and another member of the student's household had tested positive for COVID-19, and that the parent had repeatedly visited Baldwin's campus and interacted with other students and members of Baldwin's staff during the week prior to her positive test result. (Doc. No. 1-3 Ex. 2 ¶¶ 15–16.) Taking these alleged facts as true gives rise to a plausible inference that an outbreak of COVID-19 occurred at Baldwin. See Iqbal, 556 U.S. at 678. The proper definition of "outbreak" in the context of the Endorsement, and whether the circumstances at Baldwin satisfy that definition, are issues that would benefit from a more complete record. Second, Plaintiffs have plausibly alleged that the shutdown of Baldwin's operations was "the result of an order or recommendation from" from the Mayor of San Diego and the Governor of California.[1] Plaintiffs allege that the Baldwin closure first took effect on Monday, March 16, 2020, which is the same day that the San Diego Order was issued. (Doc. No. 1-3 Ex. 2 ¶¶ 18–19.) The San Diego Order

---

[1] Defendant requests that the Court take judicial notice of the San Diego Order and the California Order. (Doc. No. 7-1 at 4 n.4.) Plaintiffs do not oppose the request for judicial notice and relied on the orders in their complaint. The Court grants Defendant's request as the orders are matters of public record, which are generally subject to notice. See Lee, 250 F.3d at 688–89.

prohibited gatherings of 50 or more people, among other measures, and recommended taking action to "slow the pace of community spread and avoid unnecessary strain on our medical system." (Doc. No. 7-5 Ex. 4.) On March 29, 2020, the California Order was issued, which ordered all residents to stay home for the foreseeable future. (Doc. No. 1-3 Ex. 2 ¶ 21.) These allegations are sufficient to state a plausible claim for coverage under the Policy. Arguments concerning what actions the San Diego and California Orders required or recommended Baldwin take, the nature, timing, and duration of Baldwin's shutdown, and other issues are better addressed with a developed record and are more properly the subject of a motion for summary judgment. At this time, without sufficient development of the record, the Court declines to decide whether Plaintiffs' claim is outside the scope of the Endorsement's coverage as a matter of law. See L&M Tire Co., Inc. v. Goodyear Tire & Rubber Co., No. 3:12-CV-02720-H (RBB), 2013 WL 12157581, at *3 (S.D. Cal. Jan. 11, 2013).

As for the third alleged requirement, the Court is skeptical of Defendant's argument that the language of the Endorsement unambiguously imposes a "second causation requirement." (Doc. No. 7-1 at 11.) Defendant argues that the Endorsement requires that the government-ordered shutdown must be caused by the outbreak at the premises; i.e., a business reports an outbreak to a local health authority, who as a result "shut[s] down the premises and post[s] a quarantine or other notice on the door." (Id.) Defendant locates this alleged requirement in the last sentence of Section A.1. of the Endorsement – "Such shutdown or 'suspension' must be caused by or result from a Covered Cause of Loss [i.e., an outbreak]" – by defining "shutdown" in the sentence as a government-ordered or recommended shutdown. (Id.) The Court does not agree that the Endorsement necessarily requires this causal relationship.[2] For example, an alternative plausible reading of the

---

[2] Defendant cites to Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., No. 20-CV-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020), in support of its argument that the Endorsement unambiguously requires a causal nexus between the triggering event, i.e., the local outbreak, and the government order. (Doc. No. 7-1 at 13.) The Court does not consider Mudpie to be analogous to the present case. The Civil Authority insurance provision in Mudpie states: "The civil authority action must be due to direct physical loss of or damage to property." 2020 WL 5525171, at *6 (emphasis added). In

Endorsement is that the "shutdown or 'suspension' of your operations" must be the result of two independent events: (1) an outbreak of a communicable disease at the premises, and (2) a government order or recommendation to shut down operations, i.e., the two requirements already addressed above. Under this potential reading of the provision, the government order or recommendation could be issued in response to external circumstances, and need not be the direct product of the localized outbreak. As such, the Court declines to determine whether the Endorsement unambiguously contains a third requirement at this stage of the proceedings, without the benefit of a developed evidentiary record and briefing on the issue. For now, Plaintiffs have plausibly alleged they are entitled to coverage under the Endorsement.[3]

///
///
///
///
///
///
///

---

contrast, the Endorsement states: "Such shutdown or 'suspension' must be caused by or result from [an outbreak]." (Doc. No. 1-4 at 63 (emphasis added).) It does not state "such government order or recommendation must be caused by or result from an outbreak," which would be more comparable to the Mudpie provision. Whether, as Defendant argues, "shutdown" should be interpreted to mean "government-ordered shutdown" remains to be seen, but the Court considers the Endorsement and Mudpie provision to be dissimilar.

[3]   On December 15, 2020, Defendant filed a Notice of Supplemental Authority regarding a report and recommendation issued December 14, 2020 in Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co., No. 1:20-CV-776-RP (W.D. Tex. Dec. 14, 2020) (Hightower, M.J.). (Doc. No. 14.) The Court notes that Defendant improperly included additional argument and analysis in its notice of supplemental authority. See Desper Prod., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1335 (Fed. Cir. 1998) (The rule allowing for the filing of a notice of supplemental authority "permits a party to bring supplemental authorities to the court's attention, not supplemental argument"); Hall v. Shinseki, 717 F.3d 1369, 1373 n.4 (Fed. Cir. 2013); United States v. LaPierre, 998 F.2d 1460, 1466 n.5 (9th Cir. 1993). Nevertheless, the cited authority is not analogous to the present case for similar reasons as Mudpie, (see supra note 2), and is a decision from the Western District of Texas; as such, it is neither persuasive nor binding on this Court.

In sum, the Court considers the disputed issues to be better suited for disposition on a motion for summary judgment, after the circumstances of Baldwin's shutdown and other relevant facts have been more completely developed. For now, Plaintiffs have sufficiently pled a claim against Defendant for breach of contract for allegedly failing to provide the insurance coverage required by the Policy.[4] The Court therefore declines to dismiss Plaintiffs' complaint.

## Conclusion

For the reasons stated above, the Court denies Defendant's motion to dismiss in its entirety.

**IT IS SO ORDERED.**

DATED: December 21, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] Regarding Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Defendant argues that Plaintiffs' alleged inability to demonstrate that it wrongfully withheld benefits forecloses any finding of insurance bad faith. (Doc. No. 7-1 at 13–14.) Because the Court concludes that Plaintiffs have sufficiently stated a claim for breach of contract, the Court cannot conclude at this time that Defendant did not breach the implied covenant in its dealings with Plaintiffs. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.